RISCH, Appellant,

v.

**FRIENDLY'S ICE CREAM CORPORATION, Appellee.**

[Cite as *Risch v. Friendly's Ice Cream Corp.* (1999), 136 Ohio App.3d 109.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990037.

Decided Oct. 1, 1999.

*Robert F. Croskery & Associates* and *Robert F. Croskery,* for appellant.

*McDonald, Hopkins, Burke & Haber Co., L.P.A.,* and *Anthony J. DiVenere,* for appellee.

HILDEBRANDT, Judge.

Plaintiff-appellant, Tracy Lynn Risch, appeals the summary judgment granted by the Hamilton County Court of Common Pleas in favor of defendant-appellee, Friendly's Ice Cream Corporation ("Friendly's"), on Risch's claims of retaliatory discharge, wrongful discharge in violation of public policy, and intentional infliction of emotional distress. For the following reasons, we affirm the decision of the trial court.

Risch was intermittently employed at a Friendly's restaurant for approximately ten years. During her tenure, she attained the position of assistant manager. In November 1997, she suffered a work-related injury and missed eight weeks of work. She received workers' compensation benefits as a result of the injury.

During the time that she was injured, she called the restaurant to inform her manager, James Richter, that she would need additional time off to recover. According to Risch, Richter called her a "goddamn baby," implied that she was malingering, and complained that Risch's injury was costing the restaurant $9,000.

At the end of the eight-week period, Risch returned to work with no medical restrictions. Risch testified that, upon her return to work, Richter was surly and complained that she was being too sensitive about her injuries. When Risch informed Richter that she could no longer work back-to-back shifts on weekends as she had in the past, Richter allegedly said that the two could no longer work in the same restaurant and that he would not be the one to leave. Soon thereafter, Risch submitted a letter of resignation.

In March 1998, Risch filed a complaint alleging wrongful discharge in retaliation for her filing a workers' compensation claim, wrongful discharge in violation of public policy, and intentional infliction of emotional distress. The trial court granted summary judgment in favor of Friendly's on all claims, and the instant appeal followed.

In her first assignment of error, Risch contends that the trial court erred in granting summary judgment in favor of Friendly's on the retaliation claim. We find no merit in the assignment.

Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] The moving party bears the initial burden of identifying parts of the record that demonstrate the absence of a genuine issue of material fact. When the moving party meets that burden, the nonmoving party must produce evidence on the issues for which it will bear the burden of production at trial.[2] This court's review of the granting of a motion for summary judgment is *de novo*.[3]

R.C. 4123.90 prohibits an employer from taking punitive measures against an employee for filing a workers' compensation claim. To establish a prima facie case of retaliation under R.C. 4123.90, the employee must show that she was "injured on the job, filed a claim for workers' compensation, and was discharged by that employer in contravention of R.C. 4123.90."[4]

In the case at bar, Risch concedes that she was not discharged but rather resigned her position. She contends, however, that she was constructively discharged in light of the actions of Richter after her filing of the workers' compensation claim. As a threshold issue, therefore, we must determine whether there existed any genuine issue of material fact concerning constructive discharge. Because we answer that question in the negative, we conclude that summary judgment was properly entered in favor of Friendly's.

A claim of constructive discharge is in essence a claim that the employer's conduct was so egregious that the employee was "forced * * * to sever the employment relationship involuntarily."[5] In determining whether a constructive discharge has occurred, courts must apply an objective test.[6] There-

---

1. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192.

2. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

3. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

4. *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, syllabus.

5. See *Powers v. Springfield City Schools* (June 26, 1998), Clark App. No. 98–CA–10, unreported, 1998 WL 336782, at *5.

6. *Mauzy v. Kelly Serv. Inc.* (1996), 75 Ohio St.3d 578, 588, 664 N.E.2d 1272, 1280.

fore, Risch was required to demonstrate that the working conditions in this case were so difficult or unpleasant that a reasonable person would have felt compelled to resign.[7] An employee's belief that he was compelled to resign must be judged "without consideration of his undue sensitivities." [8]

Risch failed to demonstrate a genuine issue of material fact with respect to constructive discharge. She cites Richter's comments about her being a "goddamn baby" and a malingerer, as well as his comments concerning the cost of her workers' compensation claim to the restaurant, as indications that her working conditions had become intolerable and that her termination was imminent. We cannot agree that a reasonable person would have reacted in this manner. Richter's comments, while arguably boorish and offensive, could not be deemed so egregious or pervasive as to render the working conditions intolerable. Richter's comments did not imply that any adverse employment action was forthcoming or that he intended to treat Risch differently because of the cost of Risch's claim or the perceived malingering. Thus, we cannot say that the comments would have caused a reasonable person to resign.

Risch also cites Richter's general attitude of surliness or anger as creating intolerable working conditions. We find no merit in this argument. Though it appears from the record that Richter may not have been at all times a pleasant person with whom to work, Risch's contention that she was led to fear for her personal safety is not supported by the record.[9] Richter's behavior following Risch's filing of the workers' compensation claim, while perhaps subjectively threatening to Risch, could not be deemed objectively threatening based upon the facts as described by Risch in her testimony. Moreover, the behavior cited by Risch did not objectively indicate that her termination was imminent or that any other adverse employment decision was to result from her filing of the workers' compensation claim.

Perhaps most superficially troubling is Richter's statement that, given Risch's decision not to work back-to-back weekend shifts, only one of them would remain at the restaurant. Risch implies that this statement evinced a decision on the part of Richter to terminate her employment. However, this argument is also not supported by the record. There is undisputed evidence in the record that Richter did not have the authority to fire Risch and that the authority to

---

7. *Id.*, paragraph four of the syllabus.

8. *Wilson v. Firestone Tire & Rubber Co.* (C.A.6, 1991), 932 F.2d 510, 515.

9. Risch also describes several of Richter's tantrums that occurred before she filed her workers' compensation claim, including one in which Richter threw a coffee cup in her direction. However, because these occurred before the claim, we find no nexus between those incidents and the alleged adverse employment decision.

terminate employment was vested in Richter's supervisor, Todd Moesher. Moesher, according to Risch's own testimony, expressly approved of her not working the back-to-back shifts, thus, negating any inference that her refusal to do so would result in termination or other adverse employment actions. Thus, we cannot say that Richter's statement would have led a reasonable person to believe that termination was imminent.[10] In any event, according to Risch herself, her decision to leave Friendly's was ultimately based upon Richter's general "attitude" and not upon the dispute concerning back-to-back shifts.[11]

Thus, viewing the cumulative effect of the employer's actions,[12] we hold that the trial court was correct in finding no genuine issue of material fact concerning constructive discharge. Based upon the record before us, we must conclude that Risch voluntarily left her employment and has therefore failed to demonstrate a prima facie case of retaliatory discharge. Accordingly, we overrule the first assignment of error.

In her second assignment of error, Risch argues that the trial court erred in granting summary judgment in favor of Friendly's on her claim of wrongful discharge in violation of public policy. This court recently held that a common-law cause of action exists for wrongful discharge in those cases in which the employer has retaliated against an employee for filing a workers' compensation claim.[13] However, as was the case with the statutory claim brought under R.C. 4123.90, the common-law cause of action for wrongful discharge requires a showing of termination or other adverse employment action.[14] Here, Risch again relies on the theory of constructive discharge. Having held that the trial court properly rejected that theory with respect to the statutory claim, we must also conclude that Risch's common-law claim is without merit. Accordingly, the second assignment of error is overruled.

---

**10.** Risch also intimates that this statement was intended as a threat to her personal safety. Applying the objective test, as we must under the dictates of *Mauzy*, we cannot lend credence to that interpretation. In the context of the conversation, even as related by Risch herself, it is evident that Richter was referring to one of the two leaving the restaurant and was not referring to one of them being harmed.

**11.** We also note that Risch testified that Richter exhibited the same attitude toward all employees and that Risch specifically rejected the notion that she had been singled out for her filing of the workers' compensation claim. Therefore, even were we to find genuine issues of material fact concerning constructive discharge, we would be constrained to affirm the trial court's ruling on the ground that Risch failed to demonstrate retaliation.

**12.** See *Mauzy, supra*, 75 Ohio St.3d at 589, 664 N.E.2d at 1281.

**13.** See *Boyd v. Winton Hills Med. & Health Ctr., Inc.* (1999), 133 Ohio App.3d 150, 727 N.E.2d 137.

**14.** See *id.*

■ In her third and final assignment of error, Risch argues that the trial court erred in granting summary judgment in favor of Friendly's with respect to her claim of intentional infliction of emotional distress. We are not persuaded.

■ To recover on a claim of intentional infliction of emotional distress, the plaintiff must demonstrate that "(1) the defendant [either] intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." [15]

■ Though we question the sufficiency of Risch's proof as to each of the elements of her claim, we need only discuss the fourth element, the seriousness of the alleged emotional distress. "Serious emotional distress" in this context refers to an emotional injury that is both "severe and debilitating to a reasonable person." [16] In the case at bar, the alleged emotional distress does not rise to the level of being "severe and debilitating," as Risch merely stated that she suffered from stress and nightmares and that she sometimes vomited while going home from work at Friendly's. There were no allegations that Risch was forced to seek medical or psychiatric treatment or that she was unable to function in her daily life. In fact, Risch concedes that she began a new job soon after resigning from Friendly's. Under these circumstances, the trial court correctly entered summary judgment in favor of Friendly's on the claim of intentional infliction of emotional distress. The third assignment of error is hereby overruled, and the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

GORMAN and PAINTER, JJ., concur.

PAINTER, Judge, concurring.

I concur in all respects with Judge Hildebrandt's excellent analysis. Having a difficult boss is not constructive discharge. If it were, the unemployment lines, and court dockets, would be long indeed.

---

15. *Ekunsumi v. Cincinnati Restoration, Inc.* (1997), 120 Ohio App.3d 557, 562, 698 N.E.2d 503, 506.

16. *Meyers v. Hot Bagels Factory, Inc.* (1999), 131 Ohio App.3d 82, 94, 721 N.E.2d 1068, 1076.