[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Plaintiff-appellant James Sanders, in an amended three-count complaint,[1] alleged in counts one and two that defendant-appellee United Parcel Service ("UPS") had prevented him from becoming a full-time employee and had failed to provide him with a reasonable accommodation because he was handicapped and an African-American. In count three, Sanders also alleged that he had been denied an opportunity to earn overtime pay as a result of his lawsuit filed against UPS. On appeal, in a single assignment of error, Sanders contends that the trial court erred in granting summary judgment in favor of UPS and dismissing his complaint with prejudice. Finding no merit in the assignment, we affirm the judgment of the trial court.
Pursuant to Civ.R. 56(C), a motion for summary judgment is to be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2]
The moving party bears the initial burden of identifying parts of the record that demonstrate the absence of a genuine issue of material fact. When the moving party meets that burden, the nonmoving party must produce evidence on the issues for which it will bear the burden of production at trial.[3] This court's review of the granting of a motion for summary judgment is de novo.[4] It is only disputes over "facts that might affect the outcome of the suit under the governing law [that] will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."[5]
Sanders argues that there were material issues of fact as to (1) whether he suffered from a handicap, (2) whether he was denied a reasonable accommodation when he requested either a full-time position or the combination of two vacant part-time positions into one full-time position, (3) whether he had been discriminated against because of his race since, although similarly situated, he was treated differently from a Caucasian employee, (4) whether, after he made a prima facie case of racial discrimination, UPS's articulated reasons for refusing him accommodation were a pretext for unlawful discrimination, and (5) whether he was retaliated against for exercising his federal and state rights under the disability statutes.
 The Ohio Supreme Court has reiterated the elements of a claim for discrimination based upon a handicap:
 To establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.[6]
 Once the plaintiff has established a prima facie case of handicap discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for its action.[7] Once the employer establishes a nondiscriminatory reason for the action taken, then the employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination.[8]
Because Ohio handicap discrimination law is similar to the federal Americans with Disabilities Act ("ADA"), Ohio courts may seek guidance in the interpretation of the Ohio law from regulations and cases that interpret the ADA.[9]
Even if Sanders is not handicapped, he is still protected by the handicap-discrimination laws if UPS perceived him as being handicapped.[10] Clearly a genuine issue of material fact remains in dispute as to whether Sanders' left-arm on-the-job injury qualifies him as being handicapped. In UPS's brief, it notes that "[d]ue to his injuries he sustained in 1978, Sanders was unable to successfully complete the training program or perform the duties of a driver." Moreover, in Dr. Frank R. Noyes's letter dated December 17, 1996, addressed to Carole Rau, a district occupational health supervisor for UPS for approximately thirteen years at the time of her deposition in 1998, Dr. Noyes described Sanders as having a significant injury with permanent functional limitations, leaving him unable to drive a truck or lift anything weighing greater than twenty pounds, and Dr. Ira Gel, in a handwritten note dated January 7, 1997, advised that the only restriction was that Sanders could not drive a truck. But our analysis does not end with this, as an employee's failure to sustain his burden on any one of the elements of the prima facie case effectively defeats a handicap-discrimination claim.
In reviewing the record, we cannot say that any adverse employment action was taken against Sanders based on his handicap. Sanders began working at UPS in 1976 as a part-time loader/unloader capacity. After a medical leave for his 1978 on-the-job injury, Sanders was permitted to return to and keep the same position. Sanders subsequently held a series of other part-time positions, with one failed attempt to qualify for a full-time driver position because of his left-arm injury. In 1996, upon learning that Robert Centner, a Caucasian employee with monocular vision, had requested and received a newly created full-time, non-driving position, Sanders requested a similar full-time position as well. UPS refused both Sanders's 1996 request and a 1997 request from part-time UPS employee Peter Witt for full-time, non- driving positions. Witt was a Caucasian employee with a neck impairment that prevented him from becoming a UPS driver. With no evidence beyond that of UPS's refusal to accommodate a request for creation of another full-time, non-driving position, in essence a transfer to a new position with greater benefits, there was an insufficient basis to establish a prima facie case of handicap discrimination.[11] "An employer who provides an accommodation that is not required by the ADA to one employee is not consequentially obligated to provide the same accommodation to other disabled employees."[12] Accordingly, Sanders has not demonstrated a prima facie case of handicap discrimination.
Sanders next argues that the trial court erred in finding that no issue of material fact existed as to his claim of race discrimination. Absent direct evidence of discrimination, a plaintiff may still prove racial discrimination by establishing a prima facie case.[13] The Ohio Supreme Court has adopted the United States Supreme Court's test for establishing a prima facie case of discrimination.[14] In order to establish a prima facie case of discriminatory treatment, Sanders must have produced some evidence showing that (1) he is in a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) a comparable, nonprotected person was treated more favorably.[15] Once a plaintiff sets forth a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that its action was taken based on legitimate, nondiscriminatory reasons.
Because Sanders is an African-American, the first prong of the disparate-treatment prima facie case exists. But Sanders has failed to provide evidence to meet the other required elements of a prima facie case. UPS approved only one request for the creation of a new full-time position for a Caucasian employee with impaired vision. UPS rejected similar requests from both Sanders and another Caucasian employee, both of whom had differing physical impairments from the accommodated employee. Even if Sanders had presented a prima facie case for racial discrimination, he presented no evidence to rebut UPS's showing that it had exercised nondiscriminatory, sound business judgment in its decision not to create additional full-time, non-driving positions. In the deposition of Laura Clements, district UPS human resources manager prior to December 1997, she stated that "we have not had success with full-time people working inside positions; operationally, it provides some challenges." Still, UPS was willing to create a new full-time, split-shift position for one employee, but his inability to perform caused operational problems. Sanders's request was made subsequent to that of the accommodated employee. At the same time the accommodated employee's performance was of some concern, Clements said that UPS had made a decision to reduce the number of full-time inside positions. Clements mentioned that UPS was also having trouble getting consistent information from Sanders's doctors as to the extent of his restrictions. Accordingly, Sanders has not demonstrated a prima facie case of racial discrimination.
Sanders next argues that he suffered retaliation for exercising his rights under the disability statutes; according to his complaint, the retaliation was that he was denied the opportunity to earn overtime pay.[16] But Sanders has not identified any material fact in dispute. With regard to overtime, he answered "yes" when asked in his July 18, 2000, deposition whether workers generally were complaining after August 1997 that overtime hours were being cut. He also admitted that he knew that work was being moved from one facility to another, and that the lack of overtime "could have been any number of things, but I would never know as low on the totem pole as I was."
Because Sanders has not demonstrated that genuine issues of material fact remain to be litigated, the trial court did not err to the prejudice of Sanders by granting UPS's summary-judgment motion on Sanders's handicap, and race- discrimination, and retaliation claims. Accordingly, Sanders's single assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] Sanders filed his original complaint in the Hamilton County Court of Common Pleas on June 5, 1997. The case was removed to federal court, where some discovery was conducted and UPS's initial motion for summary judgment was filed. On January 26, 1999, the federal court returned the case to the Hamilton County Court of Common Pleas, where Sanders was permitted to file his amended complaint on September 3, 1999.
[2] See State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589, 639 N.E.2d 1189, 1192.
[3] See Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264,274.
[4] See Risch v. Friendly's Ice Cream Corp. (1999), 136 Ohio App.3d 109,112, 736 N.E.2d 30, 32, citing Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212, 215.
[5] See Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248,106 S.Ct. 2505, 2510.
[6] Columbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569,571, 697 N.E.2d 204, 206.
[7] See Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298, 302,658 N.E.2d 738, 741, citing Plumbers Steamfitters Joint ApprenticeshipCommt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 197,421 N.E.2d 128, 132.
[8] See id.
[9] See Columbus Civ. Serv. Comm. v. McGlone, supra, at 573,697 N.E.2d at 206-207; Shaver v. Wolske Blue (2000), 138 Ohio App.3d 653,663, 742 N.E.2d 164, 170.
[10] See Columbus Civ. Serv. Comm. v. McGlone, supra, at 572,697 N.E.2d at 206.
[11] See Smith v. Ameritech Publishing, Inc. (C.A.6, 1997), 129 F.3d 857,867 ("We find, therefore, that defendants' provision of a certain accommodation to one disabled employee does not automatically entitle plaintiff to the same accommodation.").
[12] See id. at 867.
[13] See Henderson v. Cincinnati Bell Long Distance, Inc. (1996),113 Ohio App.3d 793, 796, 682 N.E.2d 41, 43.
[14] See Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, 504,575 N.E.2d 439, citing McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 93 S.Ct. 1817.
[15] See Baker v. The Buschman Co. (1998), 127 Ohio App.3d 561, 566,713 N.E.2d 487, 490-491; McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 802, 93 S.Ct. 1817, 1824.
[16] In UPS's brief, it notes that it had agreed to create six full-time combination jobs, one of which Sanders applied for and received as part of a 1997 strike settlement.