OPINION
Plaintiff-appellant, Cynthia Bowers, appeals the decision of the Butler County Common Pleas Court granting the motion for summary judgment filed by appellee, Hamilton City School District Board of Education ("Board"), on her claim of sexual harassment and related actions.
The Board employed appellant as a substitute bus aide on the routes transporting disabled children during the 1997 and 1998 school years. A few months after appellant began this employment, she alleges that Bill Harris, formerly employed by the Board as a school bus driver, began to sexually harass her.
Appellant stated that during the autumn of 1997 through the early months of 1999, Harris would repeatedly tell her that she was pretty, that she looked good in certain clothing, that she was prettier than her sister who worked as a bus aide, that she had kissable lips, and that her husband was a lucky man.
Appellant also indicated that Harris would ask her to go to breakfast, offer her doughnuts, hug her, try to hold her hand, touch her shoulder, kiss her on the cheek, and grab her face to pull her toward him in an attempt to kiss her. Appellant stated that she initially was not offended by Harris, but began to be offended by the conduct around December of 1997. Appellant stated that she never told Harris to stop his comments or conduct, but dealt with the incidents by walking away.
Appellant first reported Harris' conduct to her supervisor, Beverly Martin, on February 22, 1999. Martin apparently did not tell appellant whether she would investigate the allegations.
Appellant raised concerns about Harris' behavior and another aide commented about Harris' driving at a meeting held on March 1, 1999. This meeting was held by Martin to address the reassignment of some of the substitute aides to different routes. Even though the substitute aides would ride with a bus needing an aide on any given morning, the substitute bus aides apparently could be assigned to a particular route on a regular basis.
The bus route to which appellant was usually assigned was being designated a permanent route to which a permanent aide would be assigned. Appellant acknowledged that the decision to make her previous route a permanent route had been discussed for one or two school years.
Appellant was notified at the March 1 meeting that she was being reassigned to a shorter bus route than her previous assignment. A shorter route resulted in less pay. Appellant testified that she believed her new route was fifteen minutes shorter than her previous regular route. Appellant stated that Martin had previously promised appellant that she would be receiving the longest route available to the substitutes as the most senior substitute aide.
Appellant did not know if other substitute bus aides were also assigned shorter routes at that meeting, and she did not know which substitute aides, if any, received routes longer than appellant's reassignment. Appellant would later be reassigned to another route with less time when a permanent aide left on disability leave.
Appellant also stated that she asked Martin during the March 1 meeting what would happen to appellant if she refused to ride on Harris' bus, should she be assigned to his bus. Martin reportedly told appellant that she would be sent home.
Appellant stated that she was hospitalized during a portion of March due to the stress caused by Harris' conduct. Appellant's psychiatrist informed the Board by letter when appellant returned to work that appellant should not be exposed to Harris. Appellant testified that when Martin read the letter, Martin asked appellant to suggest how it would be possible for Martin to separate the two co-workers.
Appellant subsequently also reported her encounters with Harris to the assistant superintendent for human resources, Gene Hutzelman. Hutzelman held a meeting with appellant, Harris, Martin, and additional transportation employees and union representatives for Harris on March 26. Appellant alleges that many of her co-workers, particularly union leadership, and Martin were hostile to her at this meeting.[1]
Specifically, appellant testified that Martin was resentful that appellant "went over her head" to Hutzelman and told appellant this on more than one occasion.
Appellant never received notification from the Board concerning its response to her allegations. The Board states that it instructed Harris not to have any contact with appellant and did not assign appellant to substitute on Harris' bus.
The Board produced a letter from Hutzelman to Harris, dated March 26, 1999, which reiterated that three bus aides, including appellant, had voiced concerns about Harris' behavior toward co-workers, students, and parents, and about Harris' driving. The letter admonished Harris to refrain from such conduct and to "stay away" from these aides. Appellant indicated that she was not made aware of this letter to Harris.
Appellant stated that someone other than management told her that Harris had been instructed to stay away from her. Appellant acknowledges that Harris made no further contact with her after she reported the incidents.
According to appellant, the hostility toward her continued through the remainder of the 1998 school year. Appellant resigned her employment with the Board in August 1999, before the start of the new school year.
Appellant filed an action against the Board, alleging sexual harassment, retaliation, and wrongful discharge based upon the public policy against sexual harassment and the public policy against an unsafe workplace. The trial court granted summary judgment for the Board.
Appellant appealed, raising three assignments of error. Many of appellant's arguments overlap throughout her three assignments. We will address the first two assignments of error together.
Assignment of Error No. 1:
 WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S SEXUAL HARASSMENT CLAIM.
Assignment of Error No. 2:
 WHETHER THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM.
When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103.
The trial and appellate courts are held to the same standard on summary judgment. Crown Property Development, Inc. v. Omega Oil Co. (1996),113 Ohio App.3d 647, 655. That standard is governed by Civ.R. 56(C), which provides that summary judgment must be rendered when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Id., citing Bostic v. Connor (1988),37 Ohio St.3d 144, 146.
R.C. 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
Appellant's complaint alleged a claim for hostile-environment sexual harassment. In order to establish a claim of hostile-environment sexual harassment, appellant must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. Hampel v. Food IngredientsSpecialties, Inc. (2000), 89 Ohio St.3d 169, paragraph two of the syllabus.
Federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112. Id. at 175.
Appellant argues that, contrary to the findings of the trial court, Harris' conduct was sufficiently severe to constitute hostile-environment sexual harassment, and that appellee did not adequately respond when it failed to notify her of its investigation and actions, and retaliated against her for reporting the sexual harassment.
While appellant focused on the second and fourth factors of hostile-environment sexual harassment according to Hampel, we will address the fourth factor of Hampel because we find it determinative here. The fourth factor involves the employer's corrective action once they knew or should have known of the harassment.
The parties apparently do not dispute that Harris was not a supervisor of appellant. Therefore, according to the factors enumerated in Hampel, appellant must show that the Board, through its agents or supervisory personnel, knew or should have known about the harassment and failed to take immediate and appropriate corrective action.
Appellant admits that she did not tell any of her supervisors about Harris' conduct until February 22, 1999. There is no evidence in the record that the Board knew or should have known of Harris' conduct before that date. Therefore, we must review whether the Board failed to take immediate and appropriate corrective action once they learned of Harris' conduct toward appellant.
Appellant contends that the Board's response could not be immediate and appropriate because the Board did not communicate their actions to appellant.
Clearly, there is no evidence in the record that the Board communicated with appellant regarding its action to address the harassment. Had the Board so informed appellant, this case may not be before this court. However, the Board's failure to effectively communicate its response does not negate the corrective action it took that resulted in Harris having no further contact with appellant.
Appellant argues that the Board's failure to discipline Harris is further evidence that the Board's response was not appropriate. Where an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing. Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486, 493.
While the Board did not keep appellant informed about its response to the allegations, it did act to stop the behavior. The appropriate response, which may range in severity from a verbal warning, to a transfer, to a temporary suspension, to a firing, will depend on the facts of the particular case, including the frequency and severity of the employee's [Harris'] actions. Id. The Board's corrective action of apparently talking with Harris and sending him a letter of admonishment was appropriate because it resulted in the cessation of any objectionable behavior by Harris toward appellant.
Construing the evidence most favorably for appellant, reasonable minds could come to but one conclusion on appellant's argument concerning the Board's corrective action and that conclusion is adverse to appellant.
Appellant's evidence of the Board's failure to inform her and failure to discipline Harris fails to raise material issues of fact precluding summary judgment. However, we cannot yet rule on the summary judgment motion, as to this claim, because appellant also argues that the Board did not adequately respond to her sexual harassment complaint when it retaliated against her for making the allegations.
Appellant alleged retaliation as a separate claim in her complaint and raises the issue in the second assignment of error. Therefore, we will address the retaliation issue as it applies to both the sexual harassment and retaliation claims.
Ohio law prohibits retaliating against an employee who has opposed any unlawful discriminatory practice or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under R.C. 4112.01 through 4112.07. R.C. 4112.02(I). When analyzing retaliation claims, Ohio courts rely on federal case law.Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div. (1994), 99 Ohio App.3d 396, 402.
To prove a claim of retaliation, an appellant must establish three elements: (1) that she engaged in protected activity, (2) that she was subjected to an adverse employment action, and (3) that a causal link exists between a protected activity and the adverse action. Peterson v.Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 727.
Once an appellant successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action.Id. If the defendant meets its burden, the burden shifts back to the appellant to show that the articulated reason was a pretext. Id.
The adverse action need not result in pecuniary loss, but must materially affect appellant's terms and conditions of employment. Id. Factors to consider when determining whether an employment action was materially adverse include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id.
A change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Kocsis v.Multi-Care Mgt., Inc. (C.A.6, 1996), 97 F.3d 876, 886.
For purposes of this summary judgment motion, appellant was engaged in a protected activity. Therefore, we review the evidence presented on the second and third elements of retaliation.
To support her allegation of retaliation and the adverse employment action therein, appellant points to the hostility exhibited by her supervisor, Martin, and appellant's co-workers. There is evidence in the record that the working relationship between appellant and Martin was strained, and that the two individuals argued more than once. There is also evidence that some of appellant's co-workers, particularly some union members, were hostile or unfriendly to appellant.
Appellant has failed to show that the tension between herself and Martin had a material affect on the terms and conditions of appellant's employment. Further, appellant has been unable to link the unpleasant working relationship with any adverse employment action related to engaging in the protected activity.
There is also no evidence in the record that the Board directed the co-workers to be hostile or cold toward appellant. There was evidence that Martin told one of appellant's co-workers to consider staying away from appellant if appellant pursued the matter, but that co-worker was not an individual who was cold or hostile to appellant.
To further support her separate claim of retaliation, appellant argues that she was given a shorter route with correspondingly less pay shortly after making the harassment allegations. As we previously stated, appellant fails to show what, if any, longer substitute routes were not being assigned to her once her previously longer route was designated a permanent route. Neither has appellant presented any evidence concerning how many other substitute drivers, if any, received longer routes than she did. Appellant has also failed to show that this shorter route assignment was in retaliation for her making the sexual harassment allegations.
Appellant also argued that she was aware of another bus aide previously being "grandfathered" into a permanent position. The "grandfathering" referenced here was an instance wherein an aide was allegedly given a permanent position without taking the requisite civil service examination.
Appellant states that she believed that she would be given an opportunity to be "grandfathered" into a permanent position, but, after she made her allegations, the union allegedly indicated that it would oppose "grandfathering."
Appellant fails to present any evidence of a Board policy permitting this "grandfathering" to which appellant relied upon or to which she would be entitled. Appellant further fails to show a causal connection between the elimination of the rumors about "grandfathering" and her protected activity of complaining about sexual harassment.
As we have outlined above, appellant has failed to show that the shorter route was both an adverse employment action and an adverse employment action linked to the fact that she made the complaints. Further, appellant has failed to show that her strained relationship with Martin adversely affected the terms and conditions of her employment to the point where it amounted to retaliation.
Appellant also failed to successfully show that the lost opportunity for a "grandfathered" position which appellant believed might become available was evidence of adverse employment action linked to her exercise of a protected activity.
Upon review of the evidence, we fail to find that appellant has raised material issues of fact or that reasonable minds would differ on the issue of appellant's retaliation claims. However, another factor to consider when reviewing adverse employment action is whether appellant was discharged in retaliation. The parties agree that appellant was not discharged by the Board, but appellant argues that the Board retaliated against her by constructively discharging her.
Contrary to the assertions of the Board, appellant pleaded constructive discharge in her amended complaint by incorporating that factual allegation by reference into her retaliation and public policy claims for relief.
The Board did address the issue of constructive discharge in its summary judgment motion, and we will review the assertion that appellant was constructively discharged under her separate claim for retaliation as part of our de novo review of the summary judgment motion.
A claim of constructive discharge is in essence a claim that the employer's conduct was so egregious that the employee was forced to sever the employment relationship involuntarily. Risch v. Friendly's Ice CreamCorp. (1999), 136 Ohio App.3d 109, 112.
To prove a claim for constructive discharge, appellant must demonstrate that the Board's actions were so intolerable that a reasonable person under such circumstances would have felt compelled to resign. Wille v.Hunkar Laboratories, Inc. (1998), 132 Ohio App.3d 92, 106.
In determining whether a constructive discharge has occurred, courts generally apply an objective test. Mauzy v. Kelly Serv. Inc. (1996),75 Ohio St.3d 578, 588. The issue is whether the cumulative effect of the Board's actions would make a reasonable person believe that termination was imminent. Wille at 107.
Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast. Mayo v.Kenwood Country Club, Inc. (1999), 134 Ohio App.3d 336, 341, citingGarner v. Wal-Mart Stores, Inc. (C.A.11, 1987), 807 F.2d 1536, 1539. An employee's perception that he was forced to resign must be judged without consideration of his or her undue sensitivities. Id.
In addition to the arguments previously presented for the adverse employment action, appellant argues that her fear that she would be placed on Harris' bus during the upcoming school year and the hostility she felt from her supervisor led her to resign her employment.
Appellant also asserts that the Board failed to inform her that she would be returning for the 1999 school year before she resigned on or about August 16, and, therefore, she believed that her termination was imminent.
Appellant testified that she asked Martin in June about rumors that some aides would not be asked to return to work for the new school year. Appellant posed the hypothetical question to Martin as to the reasons why appellant might not be asked to return, and Martin replied that appellant's attendance might be a reason. Appellant acknowledged that in previous years she was not notified about returning to work for the Board for a new school year until some time during the month of August.
Viewing the cumulative events that occurred prior to appellant's resignation, appellant presented evidence of unpleasantness in the workplace, but not that the working conditions were so intolerable that a reasonable person would have felt compelled to resign and would have believed that discharge was imminent.
Construing all the evidence presented most favorably for appellant, reasonable minds could come to but one conclusion on the issue of constructive discharge and that conclusion is adverse to appellant. Appellant has not presented any material issues of fact that would preclude summary judgment on the constructive discharge theory.
Based upon this finding, appellant has failed to demonstrate constructive retaliatory discharge or other factors showing adverse employment action to survive summary judgment on her separate claim for retaliation. Summary judgment was properly granted on the claim for retaliation, and appellant's second assignment of error concerning the claim for retaliation is overruled.
We next return to appellant's first assignment of error contesting summary judgment on her sexual harassment claim. Appellant argues that the Board did not appropriately respond to her sexual harassment complaints because it did not inform her of its corrective action, did not discipline Harris, and retaliated against appellant.
Appellant's arguments consisting of the Board's failure to communicate and failure to discipline Harris did not raise material issues of fact on the fourth factor of Hampel, 89 Ohio St.3d 169, which is required to establish a claim for hostile-environment sexual harassment. Based upon our finding that appellant's retaliatory conduct argument also fails, reasonable minds can come to but one conclusion on the sexual harassment claim and that conclusion is adverse to appellant. Summary judgment is proper on the claim for sexual harassment, and appellant's first assignment of error is overruled.
Assignment of Error No. 3:
 WHETHER THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
Appellant argues that she was constructively discharged for making complaints about sexual harassment and unsafe working conditions. Appellant asserts that her constructive discharge meets the requirements of wrongful discharge in violation of public policy.
The elements of wrongful discharge in violation of public policy are:
 1.That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law.
 2. That dismissing employees under circumstances like those involved in the appellant's dismissal would jeopardize the public policy.
 3. That appellant's dismissal was motivated by conduct related to the public policy.
 4. That the employer lacked overriding legitimate business justification for the dismissal.
Collins v. Rizkana (1995), 73 Ohio St.3d 65, 69-70.
The trial court apparently did not consider the issue of constructive discharge for these claims. The trial court found that appellant was arguing harassment in violation of public policy and granted summary judgment.
As we previously noted, appellant did allege constructive discharge for these two claims. However, since we have concluded above that appellant was not constructively discharged, appellant can allege no facts that survive summary judgment on appellant's two claims for wrongful discharge.
While the trial court granted summary judgment on these claims for a different reason, the trial court did not err in granting summary judgment on appellant's public policy claims. We will affirm the trial court's judgment if any valid grounds are found on appeal to support it.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491.
Summary judgment is proper on the two claims for wrongful discharge, and appellant's third assignment of error is overruled.
The trial court properly granted summary judgment to appellee on all of appellant's claims. Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] As a substitute bus aide, appellant was not a member of the union.