DECISION.
{¶ 1} Plaintiff-appellant, Delores Swann, appeals the summary judgment entered by the Hamilton County Court of Common Pleas in favor of defendant-appellee, Cardiology Associates of Cincinnati ("CAC"), in a suit alleging employment discrimination under R.C. Chapter 4112.
 Swann's Employment with CAC {¶ 2} Swann suffered from a long history of psychological disorders. She began receiving Social Security disability payments for her disorders in 1995.
 {¶ 3} In 2001, she obtained employment preparing medical charts for CAC, a medical-practice firm. Swann later informed CAC that the chart-preparation position had become too stressful, and she asked to be transferred. CAC granted that request in April 2002, transferring her to a position in which Swann would ensure that CAC's physicians were properly credentialed with various insurance companies.
 {¶ 4} In the spring of 2003, Swann again informed her supervisor that her duties had become too stressful, and she requested a change in her work schedule from five eight-hour days to four ten-hour days. CAC granted that request on a temporary basis to give Swann some relief from the stress.
 {¶ 5} At the end of the temporary schedule change, Swann asked to be placed in a part-time position. Her supervisor informed her that there were no available part-time positions in credentialing, but Swann was permitted to work four eight-and-one-half-hour days per week.
 {¶ 6} In July 2003, Swann wrote a letter to her supervisor indicating that she would resign unless her work schedule could be reduced to eighteen hours per week. Because that schedule was not available, Swann resigned.
 {¶ 7} Toward the end of her employment with CAC, Swann had successfully applied for total-disability Social Security benefits. She began receiving the benefits soon after her resignation.
 {¶ 8} In 2004, Swann filed suit, alleging that CAC had discriminated against her on the basis of her disability and her race. The trial court granted summary judgment in favor of CAC.
 {¶ 9} In a single assignment of error, Swann now argues that the trial court erred in granting CAC's motion for summary judgment.
 Disability Discrimination and Constructive Discharge {¶ 10} Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] This court reviews the granting of summary judgment de novo.[2]
 {¶ 11} To establish a prima facie case of disability discrimination under R.C. Chapter 4112, the plaintiff must show (1) that she was disabled; (2) that the employer took an adverse employment action against her, at least in part, because of the disability; and (3) that she could have safely and substantially performed the essential functions of the job despite the disability.[3] Only when the plaintiff establishes a prima facie case does the burden shift to the employer to present evidence of a legitimate, nondiscriminatory reason for an adverse employment action.[4]
 {¶ 12} In this case, Swann did not demonstrate that there was a genuine issue of fact concerning each element of disability discrimination. Although she presented evidence of a disability, she failed to adduce evidence of the other two elements.
 {¶ 13} First, Swann failed to establish that CAC had taken an adverse employment action against her. The uncontroverted evidence was that Swann had resigned after CAC had denied her request for part-time work.
 {¶ 14} Swann, argues, though, that CAC's actions constituted a constructive discharge. A claim of constructive discharge requires evidence that the employer's conduct was so egregious that the employee was forced to resign.[5] Courts apply an objective test to determine whether a constructive discharge has occurred.[6]
 {¶ 15} Here, Swann was unable to adduce any evidence of egregious conduct on the part of CAC. To the contrary, the evidence indicated that CAC had made every effort to ensure that Swann could maintain her employment.
 {¶ 16} CAC granted Swann's request to transfer from chart preparation to credentialing, and it then granted her request to work four ten-hour days to alleviate her stress. CAC also permitted Swann to work four eight-and-one-half-hour days in an attempt to accommodate her disability. In her letter of resignation, Swann herself expressed gratitude for the firm's understanding and flexibility.
 {¶ 17} Swann now argues, though, that CAC's denial of her request to work an eighteen-hour week constituted a constructive discharge. We disagree. CAC presented evidence that the positions in credentialing required full-time staff, and Swann was unable to refute that contention.
 {¶ 18} And though Swann argues that other employees were permitted to work part-time, those employees were not in credentialing positions. Swann did not present any evidence that she was willing or able to perform the duties of those part-time positions.
 {¶ 19} Moreover, CAC's refusal to create a part-time position for Swann was consistent with case law indicating that employers are required to provide employment opportunities only within the employer's employment structure; a disabled person is not entitled to preferential treatment such as the creation of a part-time position.[7]
 {¶ 20} Swann cites this court's holding in Ventre v. Bd. ofTrustees of Green Twp.[8] for the proposition that CAC was required to provide part-time employment. In Ventre, the employee had suffered a stroke and was permitted to return to work as a road superintendent on a part-time basis.[9] The employer later fired the employee on the basis that the employee had exhibited physical limitations.[10] We held that a genuine issue of fact existed as to whether the employer was required to retain the employee on a part-time basis.[11]
 {¶ 21} The case at bar is distinguishable from Ventre.
Unlike the discharged employee in Ventre, Swann resigned from her position. Moreover, in Ventre, the employer had specifically allowed the employee to return to work on a part-time basis; it was not required to create a part-time position where none had existed. Accordingly, Ventre is inapposite to this case.
 {¶ 22} In sum, Swann failed to present any evidence that her resignation was involuntary.
 {¶ 23} Second, Swann failed to present evidence that she was capable of performing the position despite her disability. In her written request to be granted a part-time schedule, Swann herself conceded that she could not work full-time. And her successful application for total-disability benefits was further evidence that she could not maintain employment of any kind.
 {¶ 24} Therefore, we hold that the trial court correctly entered summary judgment in favor of CAC on the disability-discrimination cause of action.
 Racial Discrimination {¶ 25} Swann next argues that the trial court erred in granting summary judgment in favor of CAC on the claim for racial discrimination. Swann, who is African-American, argues that she was treated differently from Caucasian employees who were permitted to work part-time.
 {¶ 26} To establish a prima facie case of racial discrimination, the plaintiff must demonstrate (1) that she is a member of a racial minority; (2) that she suffered an adverse employment action; (3) that she was qualified for the position that she lost; and (4) that the position remained open or was filled by a person not in the protected class.[12]
 {¶ 27} We find no merit in Swann's assignment of error. In light of her resignation, Swann did not establish that she had been subject to an adverse employment action. And the Caucasian employees who were permitted to work part-time were not in positions comparable to Swann's. Thus, Swann did not establish a prima facie case of racial discrimination.
 Conclusion {¶ 28} We overrule the assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Gorman, J., concurs.
Painter, J., concurs separately.
[1] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587,589, 1994-Ohio-130, 639 N.E.2d 1189.
[2] Jorg v. Cincinnati Black United Front,153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6, jurisdictional motion overruled, 100 Ohio St.3d 1471, 2003-Ohio-5772,798 N.E.2d 406.
[3] Hood v. Diamond Products, Inc., 74 Ohio St.3d 298,1996-Ohio-259, 658 N.E.2d 738, paragraph one of the syllabus, following Hazlett v. Martin Chevrolet, Inc. (1986),25 Ohio St.3d 279, 496 N.E.2d 478.
[4] Williams v. Akron, 107 Ohio St.3d 203, 2005-Ohio-6268,837 N.E.2d 1169, at ¶ 12.
[5] Risch v. Friendly's Ice Cream Corp. (1999),136 Ohio App.3d 109, 112, 736 N.E.2d 30.
[6] Id.
[7] See, e.g., Hedrick v. W. Reserve Care Sys. (C.A.6, 2004),355 F.3d 444, 459.
[8] (Sept. 25, 1998), 1st Dist. No. C-970666.
[9] Id.
[10] Id.
[11] Id.
[12] Farris v. Port Clinton School Dist., 6th Dist. No. OT-05-041, 2006-Ohio-1864, at ¶ 60, citing McDonnell DouglasCorp v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817.