[Cite as *Thomas v. Cohr, Inc.*, 197 Ohio App.3d 145, 2011-Ohio-5916.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THOMAS, | : | APPEAL NO. C-110094 |
| | | TRIAL NO. A-0804768 |
| Appellant, | : | |
| v. | : | *O P I N I O N.* |
| COHR, INC., et al., | : | |
| Appellees. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

Civil Appeal From: Hamilton County Common Pleas Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 18, 2011

Karen A. Thomas, for appellant,.

Vorys, Sater, Seymour & Pease, L.L.P., Mark A. Knueve, Dorothea K. Langsam, and Bradley L. Gibson, for appellees.

SYLVIA SIEVE HENDON, Judge.

{¶ 1} Plaintiff-appellant, Kathleen P. Thomas, filed a complaint against defendants-appellees, Cohr, Inc., d.b.a. Masterplan, Inc. ("Masterplan"), Joseph Happ, Bernard Bruns, Charles A. Dille, Patricia Napa, and Kathy Helbringer, alleging intentional infliction of emotional distress; negligent supervision; wrongful discharge in violation of Ohio public policy; constructive discharge; discrimination based on national origin, gender, and age in violation of R.C. Chapter 4112; defamation; retaliation; and spoliation of evidence. The trial court granted summary judgment in favor of the defendants-appellees on all of Thomas's claims, except her gender-discrimination claim. Because Thomas did not oppose the summary-judgment motion with respect to that claim, the trial court dismissed it. Thomas now appeals.

{¶ 2} Thomas named each of the six defendants-appellees in her notice of appeal to this court. However, in her appellate brief, Thomas has limited her arguments to her claims against three of the defendants-appellees: Masterplan, Happ, and Helbringer.

{¶ 3} First, Thomas appeals the court's summary judgment in favor of Helbringer, Happ, and Masterplan on her claim for intentional infliction of emotional distress. She also appeals the court's summary judgment in favor of Happ on her defamation claim. In addition, Thomas appeals the court's summary judgment in favor of Masterplan on her claims for negligent supervision regarding Happ, wrongful discharge, and constructive discharge.

{¶ 4} In her appellate brief, Thomas purports to challenge the court's summary judgment in favor of Masterplan on her spoliation-of-evidence claim. However, Thomas has failed to present for our review an assignment of error or any argument regarding that claim. To be considered on appeal, errors by a trial court must be argued and supported by

2

legal authority and citation of the record. App.R. 16(A); *Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855 N.E.2d 1272, ¶ 9. Errors not argued in a brief will be deemed to have been abandoned. App.R. 12(A)(2); *Loukinas.* Accordingly, we disregard Thomas's assertion that her appeal applies to the trial court's judgment in favor of Masterplan on her spoliation claim. *Id.*

{¶ 5} Thomas has not appealed the trial court's judgment on her discrimination or retaliation claims, or its judgment on her claim that Masterplan had negligently supervised Dille, Bruns, Napa, or Helbringer.

### *Factual Background*

{¶ 6} Beginning in 2000, Thomas worked as a biomedical engineer at the Christ Hospital, repairing and maintaining hemodialysis equipment. In 2002, her department was outsourced to Genesis Technology Partners ("GTP"). In February 2006, Masterplan purchased GTP, and Thomas was hired by Masterplan.

{¶ 7} On January 25, 2006, Dille was Thomas's immediate supervisor. But Thomas called Barry Bruns, Dille's boss, to tell him that she was overwhelmed with work. Shortly after her call to Bruns, Dille entered Thomas's workstation, pointing at her and yelling, which allegedly scared Thomas. After a few minutes, Thomas got up from her chair and left her workstation. Dille followed her, "hollering" that she worked for him and that she should not "go around" him. Thomas walked to the office of Dian Danino, manager of the hemodialysis unit, and asked to speak with her. Danino met with Dille and Thomas in a conference room. According to Thomas, Dille told her that he was wrong and apologized for his behavior.

{¶ 8} Nonetheless, Thomas called Joseph Happ, Masterplan's district manager, to tell him what had happened. The next day, Happ met with her. According to Thomas,

3

Happ told her to give Dille a second chance, that it would be good for her, and that he would remove anything that she did not like from her file.

{¶ 9} Happ and Bruns began investigating the Dille incident and held several meetings with Thomas, Danino, and Dille.  Dille admitted that he had raised his voice to Thomas after she had failed to respond to his questions.  Thereafter, Happ and Bruns counseled Dille that appropriate behaviors for dealing with fellow employees did not include raising one's voice or finger-pointing.

{¶ 10} Thomas was not satisfied with Happ's investigation of the incident, so she contacted Masterplan's human-resources department in California.  In March 2006, Eloisa Abarques, the vice president of that department, organized a conference call with Happ and Thomas to discuss Thomas's concerns.

{¶ 11} Thomas felt that nothing had been resolved during the conference call, so she continued to contact the human-resources department.  In April 2006, Kathy Helbringer, an executive zone director for Masterplan, flew from Maryland to Cincinnati to meet with Thomas.  Following their three-hour meeting, Helbringer decided to allow Thomas to report to Greg Herr, rather than to Dille.

{¶ 12} In September 2007, Herr and Bruns learned from the human-resources consultant from the Christ Hospital that Thomas had been complaining to hospital employees about Masterplan's service documentation, complaining that she was overworked, and requesting that the hospital hire her.  The manager and the supervisor of the hospital's hemodialysis department indicated that they had no interest in hiring Thomas and that her negative comments had been a disruption to the department.  As a result of Thomas's conduct, Masterplan placed Thomas on a 60-day work-improvement plan in October 2007.  Thomas resigned from Masterplan in January 2008.

### Standard of Review

{¶ 13} In five assignments of error, Thomas argues that the trial court erred by granting summary judgment in favor of the defendants-appellees. Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party. See *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189. This court reviews a ruling on summary judgment de novo. *Jorg v. Cincinnati Black United Front,* 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, ¶ 6.

### Constructive Discharge

{¶ 14} In her first assignment of error, Thomas argues that the trial court erred by granting summary judgment in favor of Masterplan on her claim that she had been constructively discharged.

{¶ 15} To prove a claim of constructive discharge, a plaintiff must demonstrate that the former employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. *Wille v. Hunkar Laboratories, Inc.* (1998), 132 Ohio App.3d 92, 106, 724 N.E.2d 492; *Mauzy v. Kelly Servs.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph four of the syllabus. The question is whether the cumulative effect of the actions by the employer would make a reasonable person believe that termination was imminent. *Mauzy* at 589. The test is an objective one, so an employee's belief that she was compelled to resign must be judged without considering her " 'undue sensitivities.' " *Risch v. Friendly's Ice Cream Corp.* (1999), 136

Ohio App.3d 109, 113, 736 N.E.2d 30, quoting *Wilson v. Firestone Tire & Rubber Co.* (C.A.6, 1991), 932 F.2d 510, 515 .

{¶ 16} Thomas contends that she demonstrated a genuine issue of material fact with respect to her constructive-discharge claim. She points to the Dille incident, to Masterplan's allegedly deficient investigation, and to the disciplinary actions taken against her by Masterplan as indications that her working conditions had become intolerable.

{¶ 17} We do not agree that the cumulative effect of Dille's outburst and Masterplan's actions would have caused a reasonable person to feel that she had been forced to resign. Thomas did not resign until two years after the January 2006 incident with Dille, belying any claim that her working conditions were utterly unbearable as a result of that incident. Moreover, we do not believe that Masterplan's investigation of the incident and its efforts to address Thomas's concerns were so egregious that a reasonable employee would have felt forced to quit. See *Risch*, 136 Ohio App.3d at 112, 736 N.E.2d 30. Following the January 2006 incident, Masterplan counseled Dille about appropriate behavior. This intervention apparently succeeded because in the two years between the incident and Thomas's eventual resignation, Dille and Thomas had had no further incidents. Finally, Thomas failed to demonstrate that the October 2007 disciplinary action against her had been unwarranted or would have contributed to making her working conditions so intolerable that a reasonable person would have felt compelled to resign.

{¶ 18} Thomas further cites her doctor's testimony that returning to work at Masterplan would have been bad for her physical and mental health. She argues that a jury could find that her resignation pursuant to medical advice had been involuntary. But our inquiry is an objective one, made without consideration of Thomas's personal sensitivities. See *id.* at 113. On this record, we cannot say that the working conditions were so unbearable that a reasonable employee would have felt compelled to resign.

{¶ 19} Because Thomas failed to demonstrate a genuine issue of material fact with respect to constructive discharge, the trial court properly granted summary judgment in favor of Masterplan on that claim. We overrule the first assignment of error.

### *Discharge in Violation of Public Policy*

{¶ 20} In her second assignment of error, Thomas argues that the trial court erred by granting summary judgment to Masterplan on her claim that she had been wrongfully discharged in violation of Ohio public policy.

{¶ 21} In an action claiming wrongful discharge, "a terminated employee must articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825. In this case, Thomas has not asserted or proven the existence of a clear Ohio public policy supported by specific citations sufficient to overcome a motion for summary judgment. Moreover, in light of our holding that Thomas had voluntarily resigned from Masterplan, her wrongful-discharge claim fails as a matter of law. We overrule the second assignment of error.

### *Intentional Infliction of Emotional Distress*

{¶ 22} In her third assignment of error, Thomas argues that the trial court erred by granting judgment in favor of Masterplan, Happ, and Helbringer on her claims for intentional infliction of emotional distress.

{¶ 23} To prove her intentional-infliction claim, Thomas was required to show that Masterplan, Happ, and Helbringer had intentionally caused her severe emotional distress by engaging in extreme and outrageous conduct. *Yeager v. Local Union 20* (1983), 6 Ohio

St.3d 369, 374, 453 N.E.2d 666. Thomas cites Happ's request that she give Dille a second chance, Helbringer's failure to tell Dille to stay away from her, and Masterplan's 2007 disciplinary action against her as examples of outrageous conduct. But none of these examples would be actionable for purposes of an intentional-infliction-of-emotional-distress claim because none of the cited conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375. Consequently, we overrule the third assignment of error.

### *Defamation*

{¶ 24} In her fourth assignment of error, Thomas argues that the trial court erred by granting summary judgment in favor of Happ on her defamation claim. The elements of a defamation claim are (1) a false and defamatory statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff. *Davis v. Jacobs* (1998), 126 Ohio App.3d 580, 582, 710 N.E.2d 1185.

{¶ 25} Thomas alleged that Happ had lied about her in a conference call to two members of Masterplan's human-resources department. She contends that he had made false statements about her having had problems with co-workers in the past. Thomas failed, however, to present evidence that Happ's statements were false. On the contrary, the record demonstrates that Thomas had had problems with co-workers during her employment. In her 2003 performance review, Thomas had been warned that if communication with her peers did not improve by her next review, "it will not be acceptable." In 2005, Thomas had been warned that her behavior toward a co-worker had been unacceptable and that she was required to treat all co-workers with dignity and respect. Thomas had been instructed that

8

any further misconduct could result in disciplinary action, including suspension or termination.

{¶ 26} Because Thomas failed to demonstrate a genuine issue of fact with respect to the falsity of Happ's statements, the trial court properly entered judgment in favor of Happ on her defamation claim. We overrule the fourth assignment of error.

### *Negligent Supervision*

{¶ 27} In her fifth assignment of error, Thomas argues that the trial court erred by granting summary judgment in favor of Masterplan on her claim that it had negligently supervised Happ. An underlying requirement in such an action is that the employee is individually liable for a tort against a third person who then seeks recovery from the employer. *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235. In this case, the trial court correctly determined that Happ was not liable to Thomas for either defamation or intentional infliction of emotional distress. Accordingly, Thomas's claim for Masterplan's negligent supervision of Happ fails as a matter of law. We overrule the fifth assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

DINKELACKER, P.J., and HILDEBRANDT, J., concur.