JORG, Appellant,

v.

**CINCINNATI BLACK UNITED FRONT et al., Appellees.**

[Cite as *Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030032.

Decided July 11, 2003.

William M. Gustavson, for appellant.

Kenneth L. Lawson, Alphonse A. Gerhardstein and Scott T. Greenwood, for appellees.

---

MARK P. PAINTER, Judge.

{¶ 1} Plaintiff-appellant R. Blaine Jorg appeals from the trial court's dismissal of his defamation claim against defendants-appellees Cincinnati Black United Front ("CBUF") and Damon Lynch III. The trial court held that the statements made by CBUF and Lynch were opinions, meaning that they were protected speech under the Ohio Constitution, and granted CBUF's and Lynch's motion for summary judgment. We agree that the statements were opinions and affirm the trial court's ruling.

### I. Letter Urges a Boycott

{¶ 2} Jorg is a former Cincinnati police officer. CBUF is a civil rights organization led by Reverend Lynch. In November 2000, Roger Owensby Jr. died in police custody. The next day, the Hamilton County Coroner ruled that the cause of death was "mechanical asphyxiation," the cause of which "appears to either have been a chokehold or there was a piling of restraints, one or the other or both." Jorg was indicted and tried for assault and manslaughter in connection with Owensby's death. The case ended with an acquittal on the assault charge and a hung jury on the manslaughter charge.

{¶ 3} During this time, CBUF and Lynch were outspoken critics of the police and strong advocates for police reform. As part of their advocacy, they called for a boycott of the city. CBUF and Lynch prepared and distributed a letter to

numerous national performers and organizations that were scheduled to appear in Cincinnati, explaining the boycott and urging them to cancel their events in Cincinnati. The letter was also published in the local media.

{¶ 4} In the letter, CBUF stated, "Police are killing, raping, planting false evidence, and along with the Prosecutor and courts are destroying the general sense of self-respect for black citizens." Several lines later, the letter continued, "Officer Jorg, who, by a marine-style chokehold, killed unarmed Roger Owensby Jr. last November, was found not guilty on the assault charge and a mistrial was declared on the involuntary manslaughter charge."

{¶ 5} Based on the letter, Jorg sued CBUF and Lynch for defamation, arguing that the statements purported to be statements of fact and were false. He also contended that CBUF and Lynch had acted with actual malice in the publication of the statements, and that they had caused him damages. Because we conclude that the statements were not actionable, we need not look at the issue of malice.

{¶ 6} In his sole assignment of error, Jorg now asserts that the trial court erred in granting summary judgment. We review the entry of summary judgment de novo.[1] CBUF and Lynch were entitled to prevail on their summary-judgment motion only if (1) there was no genuine issue of material fact, (2) they were entitled to judgment as a matter of law, and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of the party opposing the motion, and that conclusion was adverse to the party opposing the motion.[2]

## II. Ohio Constitution Protects Opinions

{¶ 7} In *Scott v. News–Herald*,[3] the Ohio Supreme Court stated, "Expressions of opinion are generally accorded absolute immunity from liability under the First Amendment." The court held that this was also true under Section 11, Article I of the Ohio Constitution. The court then went on to adopt a totality-of-the-circumstances test to distinguish statements of fact from opinion.[4]

■ {¶ 8} Four years later, the United States Supreme Court rejected the notion that "opinion" is afforded additional protection under the First Amendment to the United States Constitution.[5] But opinion is protected in Ohio.

---

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

2. See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

3. *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 250, 25 OBR 302, 496 N.E.2d 699.

4. Id.

5. See *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 19, 110 S.Ct. 2695, 111 L.Ed.2d 1.

{¶ 9} In *Vail v. Plain Dealer Publishing Company,*[6] on independent state-law grounds, the Ohio Supreme Court held that under the Ohio Constitution statements of opinion are protected speech and are not actionable. The court also approved *Scott*'s totality-of-the-circumstances test, stating, "Once a determination is made that specific speech is 'opinion,' the inquiry is at an end. It is constitutionally protected."[7]

### III. The Ohio Constitution Protects Private People Too

{¶ 10} Just two years ago, in *Wampler v. Higgins,*[8] the Ohio Supreme Court clarified that the Ohio Constitution's separate and independent protection for opinions, recognized in *Scott* and reaffirmed in *Vail,* was not limited in its application to the allegedly defamatory statements made by media defendants. Nonmedia defendants may invoke the same protection, which may or may not apply depending on the totality of the circumstances.[9] Thus private persons, contending in the marketplace of ideas and the give-and-take of the political process, have the same constitutional protections of those who print or broadcast their opinions for money.

{¶ 11} The statements here are protected by the Ohio Constitution. Thus, we need not, and do not, decide whether they are also protected by the First Amendment to the United States Constitution.

### IV. Application of the Scott Test

{¶ 12} The *Scott* test to determine whether a statement is opinion or fact involves at least four factors. "First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared."[10]

{¶ 13} The *Scott* court cautioned that the test "can only be used as a compass to show general direction and not a map to set rigid boundaries."[11] Application of the test is fluid.[12] The weight given to any one factor will

---

6. *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 281, 649 N.E.2d 182.

7. See *Vail v. Plain Dealer Publishing Co.,* supra, 72 Ohio St.3d at 284, 649 N.E.2d 182, (Douglas, J., concurring).

8. *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 752 N.E.2d 962, syllabus.

9. Id.

10. See *Scott v. News–Herald,* supra, 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699.

11. See *Scott v. News–Herald,* supra, 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699.

12. See *Vail v. Plain Dealer Publishing Co.,* supra, 72 Ohio St.3d at 282, 649 N.E.2d 182.

necessarily vary depending on the circumstances of each case.[13] Whether a statement is fact or opinion is a question of law to be determined by the court.[14] The meaning of an allegedly defamatory statement is the meaning that a reasonable reader would attach to the statement.[15]

{¶ 14} The first factor requires us to look at the specific language of the allegedly defamatory words. In *Wampler*, the Ohio Supreme Court stated, "We seek in this branch of our analysis to determine whether the allegedly defamatory statements have a precise meaning and thus are likely to give rise to clear factual implications. A classic example of a statement with a well-defined meaning is an accusation of a crime, * * * whereas statements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation."[16]

{¶ 15} In this case, CBUF and Lynch made two statements that Jorg claimed were defamatory. The first did not mention Jorg but was a general statement about the Cincinnati police: "Police are killing, raping and planting false evidence and along with the Prosecutor and courts are destroying the general sense of self-respect for black citizens." The second statement was, "Officer Jorg, who by a marine-style chokehold, killed Roger Owensby Jr. last November, was found not guilty on the assault charge and mistrial was declared on the involuntary manslaughter charge."

{¶ 16} Accusations of killing, raping, and planting false evidence are certainly accusations of crimes. The clear implication of the first statement was that the Cincinnati police were committing crimes—but these were general statements impugning the police, prosecutors, and the courts, not Jorg individually. The second statement specifically indicated that Jorg had killed Owensby. A reasonable reader would think that killing a person is punishable criminal behavior. Because the statements had clear meanings and were not ambiguous, they could be interpreted as facts. Therefore, this factor weighs in favor of actionability. But we caution that this factor can be outweighed by other factors under the totality of the circumstances.[17]

---

13. Id.

14. See *Wampler v. Higgins,* supra, 93 Ohio St.3d at 126, 752 N.E.2d 962.

15. See *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139, 145, 729 N.E.2d 364.

16. Id. at 127–128, 752 N.E.2d 962, quoting *Ollman v. Evans* (C.A.D.C.1984), 750 F.2d 970, 979–980.

17. See *Scott v. News–Herald,* supra, 25 Ohio St.3d at 251, 25 OBR 302, 496 N.E.2d 699.

{¶ 17} The second factor is whether the statements are verifiable. We seek to determine whether the allegedly defamatory statements were objectively capable of proof or disproof, for "a reader cannot rationally view an unverifiable statement as conveying actual facts."[18] In *Scott*, the court found that this factor, like the first, weighed in favor of actionability, because the statement at issue was an accusation of perjury. The court held that an accusation of perjury was "an articulation of an objectively verifiable event" that could be proven "with evidence adduced from the transcripts and witnesses present at the hearing."[19]

{¶ 18} Similarly, the accusation that Jorg killed Owensby with a marine-style chokehold could be verified through a trial. In fact, Jorg was tried concerning Owensby's death, and the allegedly defamatory statement included the outcome of that trial. Accusations of rape and planting false evidence can also be objectively verified through trials. But regardless of the outcome of Jorg's trial, for our purpose of determining whether the statements made were facts or opinions, we hold that because the statements were verifiable and capable of proof, this second factor weighs in favor of fact over opinion. But we must bear in mind that Jorg was charged by the county prosecutor with killing Owensby, and the trial resulted in a hung jury.

{¶ 19} *Scott's* totality-of-the-circumstances inquiry also includes two distinct assessments of the context of the statements. The third factor examines the immediate context in which the allegedly defamatory statement was made. We examine more than simply the allegedly defamatory statements in isolation because the language surrounding the statements may place the reasonable reader on notice that what is being read is the opinion of the writer.[20] Courts should assess the entire article or column.[21]

## V. Hyperbole

{¶ 20} Considering the allegedly defamatory statements in the context of the entire letter, we are convinced that the average reader would be unlikely to infer that the statements were meant to be factual. The entire letter was a call to action and meant to cause outrage in the reader. The first paragraph of the letter stated that the "tyranny and general oppression" of life in Cincinnati was so bad that "only national and international economic sanctions may get the

---

**18.** See *Wampler v. Higgins*, supra, 93 Ohio St.3d at 129, 752 N.E.2d 962, quoting *Ollman v. Evans* (C.A.D.C.1984), 750 F.2d 970, 981.

**19.** See *Scott v. News–Herald*, supra, 25 Ohio St.3d at 252, 25 OBR 302, 496 N.E.2d 699.

**20.** See *Wampler v. Higgins*, supra, 93 Ohio St.3d at 130, 752 N.E.2d 962.

**21.** Id.

attention of the corporate leaders and their political servants." The next paragraph stated, "[We] are struggling through the highest state of Apartheid." Right after this were the allegedly defamatory statements. The closing sentence of that same paragraph stated, "We need you to help us oppose these continuous injustices!" In this context, the statements at issue were clearly hyperbole, the opinion of the writer, and were offered to persuade the reader that an immediate crisis was occurring in the city.

{¶ 21} With the letter viewed as a whole, it is obvious that it was meant to be persuasive. As the trial court concluded, it was advocacy, not objective news. The letter was seeking support for "travel and tourism sanctions against the Cincinnati area" and clearly stated this purpose in bold type in the first paragraph. While CBUF's and Lynch's minds were certainly made up, the average reader viewing the allegedly defamatory words in the context of the entire letter would have been hard-pressed to accept CBUF's and Lynch's statements as impartial reporting. We conclude that, under this factor, the statements would most likely be regarded as opinion, not fact, and this factor weighs strongly against actionability.

{¶ 22} *Scott*'s fourth concern is with the broader social context of the allegedly defamatory remarks. "Some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."[22] The *Scott* court stated, "To evaluate an article's broader context we must examine the type of article and its placement in the newspaper and how those factors would influence the reader's viewpoint on the question of fact or opinion."[23]

{¶ 23} The record indicates that the letter was published in the local newspapers, but does not indicate in what section of the papers it appeared, or what title was attached. But it is easily assumed that a reader seeing the entire letter printed in the local newspaper would have determined that it was a persuasive piece of advocacy, and not a news article purporting to be objective reporting. The letter directly addressed the reader and appealed for action, unlike a typical news article supplying facts and information. The authors, CBUF and Lynch, were not regular columnists who reported news in the local papers. It is obvious from the context of the letter that it was written to entertainers and organizations scheduled to appear in Cincinnati. CBUF and Lynch undoubtedly wanted the letter published in the newspapers to help publicize their boycott, but we consider it unlikely that a reader of the letter in the newspaper would have

---

22. See *Wampler v. Higgins,* supra, 93 Ohio St.3d at 131, 752 N.E.2d 962, quoting *Ollman v. Evans* (1984), 750 F.2d 970, 983.

23. See *Scott v. News–Herald,* supra, 25 Ohio St.3d at 253, 25 OBR 302, 496 N.E.2d 699.

accepted the statements as facts and not opinions. Therefore, this factor indicates that the reasonable reader would interpret the statements as opinions, not facts, and thus weighs against actionability.

{¶ 24} Based upon the totality of the circumstances, we are convinced that the ordinary reader would accept CBUF's and Lynch's statements in their letter as opinions and not as facts. Therefore, under the Ohio Constitution, the statements were protected speech.

{¶ 25} Accordingly, we overrule Jorg's assignment of error and affirm the trial court's grant of summary judgment.

*Judgment affirmed.*

SUNDERMANN, P.J., and DOAN, J., concur.