OPINION.
{¶ 1} Plaintiffs-appellants, Dancar Properties, Ltd., and JMMG Hospitality, Inc., appeal the summary judgment granted by the Hamilton County Court of Common Pleas in favor of defendants-appellees, O-Leary-Kientz, Inc., and Frank J. Lech, in a lawsuit alleging negligent misrepresentation, negligence, and promissory estoppel.
 {¶ 2} In 1996, Michael J. Guilfoyle was interested in purchasing a restaurant on Cincinnati's eastern riverfront. Guilfoyle and his partner, Jack Martz, found a location for the restaurant in May of that year. They formed two corporations: Dancar Properties, which they created to own the property, and JMMG Hospitality, which they created to lease the property and to operate the restaurant.
 {¶ 3} In May 1996, Provident Bank owned the real estate, which had been used for years as a restaurant. After the parties had executed a purchase contract, Guilfoyle inquired about flood insurance coverage. He discovered that Lech and his employer, O'Leary-Kientz, had handled flood coverage on the property for a number of years.
 {¶ 4} Guilfoyle testified in his deposition that he had spoken with Lech twice between the time of the execution of the purchase contract and the closing. According to Guilfoyle, Lech had informed him that flood insurance coverage was approximately $1500 annually.
 {¶ 5} On the day of the closing, Dancar and JMMG Hospitality had not obtained flood insurance but were informed that they could be added as insured parties on the policy that was in effect for Provident, and that they could then apply for their own policy at the end of the year. The closing occurred on July 9, 1996.
 {¶ 6} After the closing, Guilfoyle asked insurance agent Steven Linz about flood insurance for the property. Guilfoyle signed an application for coverage, and soon after, in mid-July 1996, Linz informed Guilfoyle that flood coverage would be approximately $25,000 to $35,000 per year. Guilfoyle informed Linz that he would pursue the policy with Lech.
 {¶ 7} Toward the end of 1996, Guilfoyle did apply for coverage with Lech. Lech procured a policy for approximately $1200 per year, and Dancar and JMMG Hospitality renewed the policy through 2001. When a flood caused extensive damage to the restaurant in 1997, the insurer paid for the damage to the property and its contents.
 {¶ 8} In 2000, Lech discovered that he had submitted the incorrect floodplain designation for the restaurant's policy. The restaurant was in fact in a plain designated zone "A-21" rather than in zone "B" as Lech had believed. The correction of the designation meant that the cost for flood coverage would increase to approximately $250,000 per year.
 {¶ 9} On August 1, 2001, Dancar and JMMG Hospitality filed suit, asserting causes of action for negligent misrepresentation, negligence, and promissory estoppel. In essence, they argued that they had relied on Lech's representation that flood insurance would cost $1500 per year, and that had they known that the coverage would in fact be in the neighborhood of $250,000, they would not have purchased the property and would not have made substantial improvements to it.
 {¶ 10} O'Leary-Kientz and Lech filed a motion for summary judgment. The trial court granted the motion with respect to all causes of action. The court held that the claims for negligent misrepresentation and negligence were barred by the statute of limitations. As for the promissory-estoppel claim, the court held that Dancar and JMMG Hospitality had failed to demonstrate that Lech had made an unambiguous promise with respect to the cost of coverage.
 {¶ 11} In their first assignment of error, Dancar and JMMG Hospitality now argue that the trial court erred in granting summary judgment against them on their claim for negligent misrepresentation.
 {¶ 12} Pursuant to Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and, with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[2] This court reviews the granting of summary judgment de novo.[3]
 {¶ 13} In the case at bar, Dancar and JMMG Hospitality agree that a four-year limitations period applied to their claim of negligent misrepresentation.[4] They argue, though, that they did not discover Lech's alleged misrepresentation until 2000, when Lech informed them of his submission of the incorrect floodplain designation. O'Leary-Kientz and Lech argue, and the trial court held, that Dancar and JMMG Hospitality had been placed on notice of the error in July 1996, when Linz told them that flood coverage would far exceed the $1500 annual premium that Lech had quoted.
 {¶ 14} We first note that there is some question whether the discovery rule is applicable to assessing the limitations period for claims of negligent misrepresentation. The Tenth Appellate District held, in Chandler v. Schriml,[5] that because negligent misrepresentation is not among the specifically enumerated causes of action for which the discovery rule applies under R.C. 2305.09, the cause of action accrues when the misrepresentation occurs.
 {¶ 15} We believe that the reasoning in Chandler is sound. But even were we to assume, as the parties have done, that the discovery rule applies to the negligent misrepresentation claim in this case, the claim still fails.
 {¶ 16} Under the discovery rule, a "discovery" that will cause the statute of limitations to run is an actual discovery or what might in the exercise of due diligence have been discovered.[6] In general, information sufficient to apprise a person of the possibility of wrongdoing gives rise to the duty to inquire into the matter with due diligence.[7]
 {¶ 17} In the case at bar, we agree with the trial court that Dancar and JMMG Hospitality were placed on notice of the alleged misrepresentation in July 1996. In his dealings with Linz, Guilfoyle was provided with a quote for flood insurance on the property that was approximately twenty times the cost of the Lech quote. Guilfoyle's response to this disparity in quotes was not to investigate the possibility that Lech had made a mistake, but merely to ignore the more expensive figure. A brief telephone call to Lech concerning the disparity might have been sufficient to reveal the mistake, but Guilfoyle did not expend even that much effort to investigate.
 {¶ 18} Dancar and JMMG Hospitality attempt to justify their inaction by arguing that Linz did not generally deal with flood coverage and that, therefore, Guilfoyle's inaction could have been attributed to simple distrust of Linz's expertise in the area. This argument is without merit. Dancar and JMMG Hospitality knew that Linz was an insurance agent, and they apparently had some belief in Linz's expertise when they asked him for a quote for flood insurance. Under those circumstances, Guilfoyle's decision to completely disregard Linz's quote could not have been justified on the basis that Linz was not an expert on flood coverage.
 {¶ 19} Dancar and JMMG Hospitality also argue that because a third party, and not O'Leary-Kientz and Lech themselves, had originally placed them on notice of the wrongdoing, there was no "triggering event" that had occurred in 1996. We find no merit in this argument. The case law regarding the triggering event for the limitations period does not require that the defendant provide the notice of wrongdoing; it merely states that where the plaintiff has information sufficient to apprise him of the possibility of wrongdoing, the limitations period begins to run. Here, Dancar and JMMG Hospitality had sufficient information in July 1996 to apprise them that Lech had been mistaken as to the cost of the insurance.
 {¶ 20} The trial court correctly held that the four-year limitations period began to run, at the latest, in July 1996. Because the claim for negligent misrepresentation was not filed until August 1, 2001, the claim was time-barred. The first assignment of error is overruled.
 {¶ 21} In their second assignment of error, Dancar and JMMG Hospitality argue that the trial court erred in granting summary judgment against them on their claim for promissory estoppel.
 {¶ 22} To prevail on a claim for promissory estoppel, a plaintiff must show (1) a promise, clear and unambiguous in its terms; (2) reliance on the promise; (3) that the reliance was reasonable and foreseeable; and (4) that injury resulted from the reliance.[8]
 {¶ 23} In the case at bar, there was no clear and unambiguous promise about the cost of flood insurance. According to Guilfoyle's testimony, Lech stated only that the cost of flood insurance for the property was $1500. Lech in fact procured coverage at that approximate cost for four years, during which time Dancar and JMMG Hospitality suffered a loss that the policy covered. Dancar and JMMG Hospitality failed to produce evidence of a clear and unambiguous promise that coverage could be procured in perpetuity, or for any specific time, at a rate in the range of $1500. Absent such evidence, the trial court correctly granted summary judgment against them, and the second assignment of error is overruled.
 {¶ 24} In their third and final assignment of error, Dancar and JMMG Hospitality argue that the trial court erred in granting summary judgment against them on their negligence claim.
 {¶ 25} In Hater v. Gradison Div. of McDonald and Co.Securities, Inc.,[9] we held that the Ohio Supreme Court's rejection of the discovery rule in cases against accountants applied generally to claims for professional negligence controlled by R.C. 2305.09. Accordingly, we held that the four-year statute of limitations for professional negligence begins to run at the time of allegedly negligent act.[10]
 {¶ 26} The claim against Lech and O'Leary-Kientz was in the nature of professional negligence. It was alleged that they had negligently provided incorrect advice concerning flood insurance coverage and that they had negligently submitted the incorrect floodplain designation in procuring the policy in November 1996. Pursuant to our holding in Hater, then, the limitations period began to run, at the latest, in November 1996, when Lech submitted the application for coverage.
 {¶ 27} And even were the discovery rule applicable, the limitations period would have begun to run in July 1996, when Guilfoyle received the Linz quote of $25,000 to $35,000. In any event, because Dancar and JMMG Hospitality did not file suit until August 1, 2001, the limitations period had expired. The third assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Doan and Gorman, JJ., concur.
[1] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587,589, 1994-Ohio-130, 639 N.E.2d 1189.
[2] See Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264.
[3] Jorg v. Cincinnati Black United Front,153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6, jurisdictional motion overruled, 100 Ohio St.3d 1471, 2003-Ohio-5772,798 N.E.2d 406.
[4] R.C. 2305.09. The statute has been amended since the filing of the complaint in the case at bar. Our citations refer to the version of the statute in effect at the time suit was filed.
[5] (May 25, 2000), 10th Dist. No. 99AP-1006. Accord James v.Partin, 12th Dist. No. CA2001-11-086, 2002-Ohio-2602, at ¶ 25.
[6] Glen Homeowners Assn., Inc. v. Towne Properties, Ltd.
(Dec. 6, 1995), 1st Dist. No. C-940369.
[7] Doe v. First United Methodist Church, 68 Ohio St.3d 531,539, 1994-Ohio 531, 629 N.E.2d 402.
[8] Hale v. Volunteers of America, 158 Ohio App.3d 415,2004-Ohio-4508, 816 N.E.2d 259, at ¶ 50.
[9] (1995), 101 Ohio App.3d 99, 109, 655 N.E.2d 189.
[10] Id.