DECISION.
{¶ 1} Plaintiff-appellant, Glenda A. Smith-Johnston, appeals the summary judgment entered by the Hamilton County Court of Common Pleas in favor of defendants-appellees, the city of Cincinnati and John Shirey, in a suit alleging wrongful discharge in violation of public policy.
 {¶ 2} In 2001, Smith-Johnston was employed by the city as manager of the Office of Municipal Investigation ("OMI"). OMI was a division of the city manager's office, and Smith-Johnston reported directly to city manager John Shirey.
 {¶ 3} The function of OMI was to investigate misconduct by city employees. OMI's duties included investigating misconduct by members of the city's police division. The police division was part of the city's safety department, whose director also reported directly to the city manager. As the supervisor of the safety department, the city manager had ultimate authority over internal investigations into police misconduct.
 {¶ 4} Following civil unrest in the city in the spring of 2001, there were multiple investigations into alleged police misconduct, including allegations that officers had wrongfully fired shots at suspects.
 {¶ 5} OMI was one of the entities investigating "shots fired" cases, and the police division was conducting a parallel investigation of the incidents. In addition, there were investigations into the possibility of criminal charges being instituted against officers who had allegedly engaged in misconduct, and the United States Department of Justice was also investigating the actions of the police division.
 {¶ 6} In the midst of these multiple investigations, Smith-Johnston believed that the police division was not complying with her requests for records in a timely manner.
 {¶ 7} In two memoranda, Smith-Johnston informed Shirey that she was being thwarted in her efforts to obtain the records. In the second memorandum, Smith-Johnston informed Shirey that if the records were not forthcoming, OMI would seek to obtain the police division records by means of subpoena or through a mandamus action.
 {¶ 8} Approximately one week after Smith-Johnston sent the second memorandum, Shirey asked for her resignation. Smith-Johnston resigned and later filed a suit claiming that she had been wrongfully discharged for pursuing the investigation into police misconduct.
 {¶ 9} The city and Shirey filed a motion for summary judgment, and the trial court granted that motion. In a single assignment of error, Smith-Johnston now argues that the trial court erred in granting summary judgment.
 {¶ 10} Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] This court reviews the granting of summary judgment de novo.[2]
 {¶ 11} There is no dispute that Smith-Johnston was an employee at will serving at Shirey's discretion. She was therefore subject to being terminated for any reason, or for no reason at all, provided that the termination was not contrary to law.[3]
 {¶ 12} But the Supreme Court of Ohio has created an exception to the employment-at-will doctrine where the termination is contrary to the clear public policy of Ohio.[4] The court has adopted four elements that must be demonstrated to prove wrongful termination in violation of public policy: (1) that a clear public policy existed and was manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) that the employer lacked an overriding legitimate justification for the dismissal (the overriding-justification element).[5] The clarity and jeopardy elements involve questions of law and are to be determined by the court.[6]
 {¶ 13} In this case, Smith-Johnston argues that she was discharged for her persistence in investigating the alleged incidents of police misconduct. We assume, for purposes of the summary-judgment proceedings, that Smith-Johnston's attempts to gain access to the police division's records were the basis for her termination.
 {¶ 14} We must decide, then, whether the termination was in violation of public policy. Smith-Johnston argues that there was a clear public policy in favor of thorough and accurate investigations of misconduct on the part of public officials. Although we have no quarrel with this proposition in the abstract, we hold that Smith-Johnston failed to demonstrate that her actions furthered the stated public policy in this case.
 {¶ 15} In the case at bar, the city had instituted clearly defined procedures to investigate alleged instances of police misconduct. The ultimate authority in implementing those procedures rested with the city manager. Shirey was therefore entrusted with coordinating the parallel investigations conducted by OMI and the police division.
 {¶ 16} The uncontroverted evidence was that criminal proceedings and internal investigations by the police division could take precedence over OMI's investigations and that it was Shirey's job to determine the priority of the investigations. The investigation by the Department of Justice further complicated matters and required Shirey to exercise his discretion in controlling the flow of information.
 {¶ 17} Smith-Johnston's attempts to subvert the city's procedures could not be said to have furthered the policy in favor of accurate and thorough investigations. Her threats to use OMI's subpoena power and to institute a mandamus action against the city indicated her intent to exceed her authority and to usurp Shirey's duties. If anything, Smith-Johnston's actions obstructed the course of the investigations by requiring other public officials to devote time to her demands and threats. We can discern no public policy in favor of such insubordination.
 {¶ 18} Moreover, Smith-Johnston failed to adduce any evidence to demonstrate that the police division was being recalcitrant or negligent in failing to comply with her demands for information. The most that Smith-Johnston was able to demonstrate was that she had not been provided with the requested information in accordance with her subjective definition of timeliness.
 {¶ 19} Under these circumstances, we hold that Smith-Johnston failed to demonstrate that she was wrongfully discharged in violation of public policy. We overrule the assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Sundermann and Hendon, JJ., concur.
[1] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587,589, 1994-Ohio-130, 639 N.E.2d 1189.
[2] Jorg v. Cincinnati Black United Front,153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6, jurisdictional motion overruled, 100 Ohio St.3d 1471, 2003-Ohio-5772,798 N.E.2d 406.
[3] Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100,483 N.E.2d 150, paragraph one of the syllabus.
[4] Greeley v. Miami Valley Maintenance Contr., Inc. (1990),49 Ohio St.3d 228, 551 N.E.2d 981, paragraph two of the syllabus.
[5] Collins v. Rizkana, 73 Ohio St.3d 65, 69-70,1995-Ohio-135, 652 N.E.2d 653, quoting Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399.
[6] Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 151,1997-Ohio-219, 677 N.E.2d 308, citing Collins, supra, at 70,1995-Ohio-135, 652 N.E.2d 653.