**MOORE, Appellant,**

**v.**

**HONICAN et al., Appellees.**

[Cite as *Moore v. Honican,* 194 Ohio App.3d 135, 2011-Ohio-2109.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–100432.

Decided May 4, 2011.

Goodson & Company, Ltd., Brett Goodson, and Stephanie Day, for appellant.

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and Kurt M. Irey, for appellees Eugene A. Honican, Hamilton County Sheriff's Department, and Hamilton County, Ohio.

Surdyk, Dowd & Turner Co., L.P.A., Edward J. Dowd, and Joshua Schierloh, for appellee Miami Township, Ohio.

HILDEBRANDT, Judge.

{¶ 1} Plaintiff-appellant, Kyle Moore, appeals the summary judgment entered in favor of defendants-appellees, Eugene A. Honican, the Hamilton County Sheriff's Department, Hamilton County, Ohio, and Miami Township, Ohio, in a personal-injury action.

## The Collision and the Resulting Lawsuit

{¶ 2} This case arose from a collision between Honican's police cruiser and a disabled pickup truck owned by Moore.

{¶ 3} Honican was a Hamilton County deputy sheriff assigned to a regular patrol duty in Miami Township under an agreement between the sheriff's department and the township. One night, shortly before 12:00 a.m., Honican was traveling west on Interstate 275 when he spotted a van in the high-speed lane with a license-plate light that was not illuminated. Honican testified in his deposition that the van, which was being operated by David Mathews, had also been speeding up and slowing down, possibly indicating that the driver was intoxicated.

{¶ 4} At the same time, Moore was driving his pickup truck west on the interstate. Earl Flowers was in the passenger seat in the cab of the truck, and Thomas Grady was riding in the truck's bed. While they were traveling in the high-speed lane, the truck broke down. Grady attempted to push the truck onto the berm, but he was unable to do so. Grady testified that the truck's emergency flashing lights had been activated.

{¶ 5} According to Honican, he had been checking the license-plate number of Mathews's van on his mobile data computer ("MDC") when the van swerved into the center lane. Honican testified that the van had been obstructing his view of Moore's truck and that he had not had time to react before striking the truck and causing Moore serious injuries. Honican stated that he had been traveling between 60 and 65 m.p.h. immediately before the crash.

{¶ 6} Mathews testified in his deposition that Honican had pulled into his lane of traffic closely behind his van. Although Honican had not activated his lights or siren, Mathews had gradually pulled into the center lane. According to Mathews, he had moved into the center lane while he was still one-quarter to one-half mile away from Moore's truck, which had its emergency flashers on.

{¶ 7} Mathews stated that he had feared that Honican had not seen Moore's truck because Honican had not changed lanes or otherwise indicated an intention to avoid the stopped vehicle. Acting on this apprehension, Mathews had opened his driver's side window and begun yelling at Honican to take evasive action.

{¶ 8} Grady testified that he had jumped out of the bed of the truck immediately before the impact and had witnessed the events that had led to the collision. According to Grady, no vehicle had swerved from the high-speed lane to the center lane, and there had been nothing obstructing Honican's view of Moore's truck. Another driver on the highway, Ryan Chaille, also testified that he had not seen any vehicle swerve into the center lane.

{¶ 9} An investigation of the accident revealed that Honican had not applied his brakes before the collision. And the point of impact between the vehicles indicated that Honican had not attempted to swerve or take other evasive action before the collision. After its investigation, the sheriff's department issued what it termed a "Level 2 Warning" to Honican based on his role in the accident.

{¶ 10} Colonel Ramon Hoffbauer of the sheriff's department explained that the MDCs in the county's cruisers were positioned on the dashboards of the cars nearly at eye level. Hoffbauer stated that at the time of the accident, there had been no written policy governing the use of MDCs while driving. Nonetheless, Hoffbauer approved of the disciplinary measure taken against Honican based on his inattentiveness.

{¶ 11} Moore filed suit against the appellees, contending that their negligence had caused his injuries. He later filed a motion for leave to amend the complaint, seeking to allege wantonness and willfulness on the part of the appellees and to assert a claim that the county and the township had wrongfully hired, retained, or supervised Honican. The trial court did not explicitly rule on Moore's motion.

{¶ 12} The appellees filed a motion for summary judgment, which the trial court granted.

### Amendment of the Complaint

{¶ 13} In his first assignment of error, Moore now argues that the trial court erred in failing to grant his motion to amend the complaint to include allegations that the appellees had acted willfully and wantonly and to include a cause of action for "negligent, wanton, and reckless" retention and supervision of Honican.

{¶ 14} We find no merit in the assignment. Leave to amend a complaint "shall be freely given when justice so requires."[1] But in this case, Moore can demonstrate no prejudice in the trial court's failure to explicitly grant his motion. First, it is evident that the court considered the facts of the case as if Moore had alleged wantonness and willfulness on the part of Honican: in its decision, the court stated that "Deputy Honican's actions may constitute negligence, but no

---

1. Civ.R. 15(A); *Heard v. Dubose*, 1st Dist. No. C–060265, 2007-Ohio-551, 2007 WL 424094, ¶ 8.

reasonable jury could find that his actions constitute willful or wanton misconduct."

{¶ 15} Second, we find no prejudice in the trial court's failure to grant leave to add the cause of action for wrongful hiring or supervision. A political subdivision may be held liable if its hiring or retention of an employee indicates malice or bad faith, or if it rises to the level of wantonness or recklessness.[2] But here, the record reflects no such wrongfulness. Honican's personnel file and other documentary evidence were made available to Moore. The evidence indicated that while Honican had been disciplined for infractions of departmental rules, those infractions were not so severe as to raise a genuine issue of fact concerning malice or wantonness on the part of the county. Accordingly, we overrule the first assignment of error.

## Summary Judgment and Immunity

{¶ 16} In his second and final assignment of error, Moore contends that the trial court erred in granting summary judgment in favor of the appellees.

{¶ 17} Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[3] This court reviews a ruling on summary judgment de novo.[4]

{¶ 18} Political subdivisions are liable for injuries "caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."[5] But a political subdivision has a complete defense if "[a] member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct."[6]

---

2. R.C. 2744.03(A)(5). See also *Scott v. Dennis*, 8th Dist. No. 94685, 2011-Ohio-12, 2011 WL 94212, ¶ 24.

3. See *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

4. *Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, ¶ 6.

5. R.C. 2744.02(B)(1).

6. R.C. 2744.02(B)(1)(a).

{¶ 19} Similarly, an employee of a police department is entitled to immunity unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."[7] We have held that such conduct is the "functional equivalent" of the wanton and willful misconduct that would subject a political subdivision to liability.[8] Wanton misconduct is the failure to exercise any care towards those to whom a duty is owed if the failure to exercise care occurs when a great probability of harm exists.[9] Willful misconduct involves "an intent, purpose or design not to perform the duty of care that is owed."[10] As this court has held, the determination of whether conduct exceeds negligence and becomes wanton or willful must be based on the totality of the circumstances.[11]

## An Emergency Call

{¶ 20} But we must first decide whether Honican was on an "emergency call" within the meaning of the immunity statutes. R.C. 2744.01(A) defines "emergency call" as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." Although the statute lists "inherently dangerous situations" as one of the circumstances giving rise to an emergency call, the Supreme Court of Ohio has emphasized that such a situation need not exist to afford the political subdivision the protections of R.C. 2744.02(B)(1)(a).[12]

{¶ 21} In this case, the trial court correctly concluded that Honican was on an emergency call within the meaning of the statute. It was undisputed that the license-plate light on Mathews's van was not working, thus giving rise to a violation of R.C. 4513.05. Honican was obligated to investigate the violation, and he was therefore on a "call to duty." Accordingly, the county was entitled to immunity in the absence of wanton or willful misconduct on the part of Honican.

---

7. R.C. 2744.03(A)(6)(b).

8. *Whitley v. Progressive Preferred Ins. Co.*, 1st Dist. Nos. C–090240 and C–090284, 2010-Ohio-356, 2010 WL 396021, ¶ 11.

9. Id. at ¶ 12, citing *Behm v. Cincinnati* (Nov. 18, 1992), 1st Dist. No. C–910865, 1992 WL 336522, and *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 515, 605 N.E.2d 445.

10. *Whitley* at ¶ 12, citing *Alagha v. Cameron*, 1st Dist. No. C–081208, 2009-Ohio-4886, 2009 WL 2974892, ¶ 21, and *Herweh v. Bailey* (Oct. 23, 1996), 1st Dist. No. C–960177, 1996 WL 603793.

11. See *Herweh*.

12. See *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 14.

## Wanton or Willful Misconduct

{¶ 22} Now we address whether there were genuine issues of material fact with respect to Honican's alleged wanton or willful misconduct.

{¶ 23} Moore presented evidence that his disabled pickup truck had been clearly visible for up to one-half mile before Honican had struck it with his cruiser. Stated another way, there was evidence that Honican had taken his eyes off the road for as long as 30 seconds while driving 60 to 65 m.p.h. Even when Mathews had attempted to gain Honican's attention by shouting, Honican's attention remained fixed on his cruiser's MDC. The absence of skid marks or other evidence of evasive action established that Honican had not taken notice of Moore's truck at any point prior to the impact.

{¶ 24} And while there was no official policy concerning the use of MDCs while driving, the sheriff's department issued a written reprimand to Honican for his role in the accident. Construing the evidence in a light most favorable to Moore, a rational trier of fact could have reasonably held that such complete inattentiveness—for such an extended period of time—had amounted to a total absence of care under circumstances when great harm had been likely to occur.

{¶ 25} Honican emphasizes his own testimony indicating that Mathews's van had obstructed his view of Moore's truck before Mathews had allegedly swerved into the center lane. But this testimony was contradicted by other witnesses, including a disinterested witness who testified that he had seen nothing obstructing Honican's view. These contradictory versions of the events demonstrated that there remained genuine issues of fact to be determined at trial. Thus, the trial court erred in entering summary judgment in favor of Honican, Hamilton County, and the sheriff's department.

## No Liability for Miami Township

{¶ 26} Finally, we turn to the issue of whether Miami Township could be held liable for Honican's alleged misconduct. As we have already noted, R.C. 2744.02(B)(1) subjects political subdivisions to liability for certain misconduct on the part of their employees. But R.C. 2744.01(B) provides that the term " '[e]mployee' does not include an independent contractor * * *."

{¶ 27} Here, the uncontroverted evidence was that Honican was an independent contractor for, not an employee of, Miami Township. The Hamilton County Sheriff's Department hired and paid Honican, assigned his job locations and duties, and made all decisions with respect to promotion, discipline, and other employment matters. Miami Township's only role in the contractual relationship was to reimburse the county for providing Honican's services. Under these

circumstances, Honican was not an employee of Miami Township, and the township could not be held liable for his alleged misconduct.[13]

{¶ 28} Accordingly, we sustain the second assignment of error with respect to Honican, Hamilton County, and the sheriff's department. We overrule the assignment with respect to Miami Township.

### Conclusion

{¶ 29} We affirm that part of the trial court's judgment entered in favor of Miami Township. But with respect to the remaining appellees, the judgment is reversed, and we remand the cause for further proceedings consistent with this decision.

*Judgment accordingly.*

FISCHER, J., concurs.

DINKELACKER, P.J., concurs in part and dissents in part.

DINKELACKER, Presiding Judge, concurring in part and dissenting in part.

{¶ 30} While I agree with much of the analysis outlined by the majority, I conclude that Moore presented insufficient evidence to overcome summary judgment on the issue of whether Honican had acted wantonly.

{¶ 31} Last year, this court addressed the level of misconduct required to constitute wantonness.[14] In that case, we wrote that "[w]anton or reckless misconduct is more than negligence. Wanton misconduct is the failure to exercise any care whatsoever. '[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury."[15] We noted that such conduct involves the actor "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."[16]

---

13. See *Weldon v. Prairie Twp.*, 10th Dist. No. 10AP–311, 2010-Ohio-5562, 2010 WL 4632553, ¶ 13, jurisdictional motion overruled, 128 Ohio St.3d 1426, 2011-Ohio-1049, 943 N.E.2d 573.

14. *Callender v. Schroder,* 1st Dist. No. C–090803, 2010-Ohio-4473, 2010 WL 3722782.

15. Id. at ¶ 8, quoting *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, and *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 96–97, 55 O.O.2d 165, 269 N.E.2d 420.

16. Id., citing *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 33, 697 N.E.2d 610, quoting *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, fn. 2.

{¶ 32} As the Fifth Appellate District noted in March of this year, "[r]eckless misconduct differs from * * * that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man."[17] The difference between reckless misconduct and negligence "is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."[18]

{¶ 33} In this case, I conclude that Honican's "inattentiveness" failed to rise to the level of wanton misconduct as a matter of law. The accident occurred at midnight—a time when few motorists would be expected to be on the road. Honican's attention was on his MDC, which was positioned on the dashboard nearly at eye level, for no more than 30 seconds. Further, the record reflects that while Honican was reprimanded for the accident, his use of the MDC did not violate the policies of the Hamilton County Sheriff's Department.

{¶ 34} Honican's conduct did not establish a "disposition to perversity" that amounted to knowing that his conduct would in all probability result in injury. Honican's conduct may have involved "inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency," but such conduct amounted to mere negligence. Since the risk that Honican's conduct created was not "substantially greater than that which [was] necessary to make his conduct negligent," I respectfully dissent from that portion of the majority's opinion.

---

17. *Burlingame v. Estate of Burlingame,* 5th Dist. No. 2010–CA–00124, 2011-Ohio-1325, 2011 WL 982490, at ¶ 36.

18. Id., citing *Marchant v. Gouge,* 187 Ohio App.3d 551, 2010-Ohio-2273, 932 N.E.2d 960, at ¶ 36.